# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMONT HAGAN,** | : | CIVIL ACTION NO. 1:10-CV-0883 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **JEFFREY BEARD**, et al., | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Damont Hagan ("Hagan") initially filed this action on April 26, 2010. (Doc. 1.) The matter is proceeding *via* a second amended complaint. (Doc. 45.) The following individuals are named as defendants: Deputy Secretary, Department of Corrections Central Office, David Novitsky ("Novitsky"); Superintendent John Palakovich ("Palakovich"); Lieutenant Nathan Goss ("Goss"); Corrections Officer Barry Jones ("Jones"); Sergeant William Warner ("Warner"); Houser; Nurse K. Moore; Unit Manager Chris Chambers ("Chambers"); Corrections Officer Robert Eger ("Eger"); Corrections Officer Mark Spieles ("Spieles"); Corrections Officer Brant Brant; Corrections Officer Andy Hubert ("Hubert"); Corrections Officer Phelps; and Corrections Officer Bankes. Also named as a defendant is Shirley Smeal ("Smeal"); Deputy Director, Department of Corrections Central Office. However, Hagan seeks to voluntarily dismiss the claims against this defendant; Smeal will be terminated as a defendant pursuant to Federal Rule of Civil Procedure 41(a)(2). (Doc. 54, at 9, ¶ 6.)

Presently pending is defendants' motion to dismiss all claims contained in the second amended complaint except the excessive force claim against Corrections Officers Spieles, Hubert, Jones, and Bankes, contained in Count I and his conspiracy claims in Count III against Sergeant Warner, Unit Manager Chambers, Sergeant Houser, and Lieutenant Goss. (Doc. 47 at 3-4, 6.) Based on the discussion set forth below, the motion will be granted in part and denied in part.

Also pending is Hagan's "motion to disregard and reprimand," (Doc. 61), which will be construed as a sur reply and considered by the Court in disposing of the motion to dismiss. Hagan's brief in support of his motion (Doc. 64), his reply brief(Doc. 66) and defendants' brief filed in opposition to plaintiff's motion (Doc. 64) will also be considered.

I.  **Allegations of the Second Amended Complaint**

Hagan alleges that on August 1, 2008, while incarcerated in the Special Management Unit at the State Correctional Institution at Camp Hill, Corrections Officer Spieles approached his cell door and stated "Hagan you coming out to get your ass beat - I mean for a legal visit[?]" (Doc. 45, at 3, "Statement of Claim" ¶ 1.) He refused to come out until there was a camera to document his exit from the cell. (Id.) Defendant Spieles returned with Sergeant Jones, and Corrections Officers Hubert and Bankes, and informed him that there was a camera present. (Id.) After he agreed to be handcuffed defendants Spieles, Jones, Hubert and Bankes entered his cell and began kicking and punching him. He suffered injuries to his head, mouth, right hand and one of his knees. (Id. at 3, "Statement of Claim" ¶ 2.)

**A.     Retaliation**

    1.     Phelps and Moore

Following the assault, Hagan alleges that while on his rounds, Corrections Officer Phelps stopped at his cell door, noticed his injuries, and stated "it looks like you did that to yourself." (Doc. 45, at 5, ¶ 3.) When Hagan informed Phelps that his injuries were the result of an assault, Phelps laughed. (Id.) Nurse Moore came to the cell and, despite Hagan's report that he was injured during an assault, she refused to take pictures of his injuries because, after speaking with Phelps, she, too, believed the injuries were self-inflicted. (Id.)

Thereafter, because Hagan orally complained about being assaulted by corrections officers, Phelps issued a "fabricated misconduct" charging Hagan with causing injury to himself. (Id.) Allegedly, defendant Moore corroborated the misconduct with false medical documentation. (Id.)

    2.     Eger, Spieles and Palakovich

After the August 1, 2008 assault, Hagan filed a grievance against Corrections Officers Eger and Spieles. (Doc. 45, at 4, ¶ 10.) He alleges that upon becoming aware of the grievance, Eger and Spieles started giving information about his criminal case to inmate William Kulp. (Id., at 4, ¶ 11.) Also, after being notified by Hagan and the Human Rights Coalition of the assault, Superintendent Palakovich allegedly "informed William Kulp that he would transfer him if he informed detectives in [Hagan's] case that [he] was having someone take [his] case in September/August 2008." (Id. at ¶ 12.) "Based on Palakovich's, Eger's and Spieles

[sic] directions, William Kulp gave dectives [sic] in my case false info, sabotaging my case on September 17, 2008." (Id. at ¶ 13.) In addition, Eger issued him a fabricated misconduct on September 2, 2008. (Id. at ¶ 14.)

      3.    Brant

Following numerous complaints against staff members who assaulted him, Hagan alleges that Corrections Officer Brant began harassing him by calling him a snitch. (Doc. 45, at 6, ¶ 15.) He filed grievances concerning this conduct in October 2008 and January 2008. (Id.) On January 20, 2009, Brant told Hagan that if he came out of his cell, he would assault him. (Id. at ¶ 17.) Moments later he was sprayed in the face with chemicals. (Id.) Brant commented "that if he didn't like it, he could write another grievance. . . ." (Id.)

**B.    Conspiracy**

      1.    Spieles

In June 2008, Hagan received a letter "from a federal lawyer stating that [his] testimony was needed in a civil action against William Warner. . . ." (Doc. 45, at 4, ¶ 6.) "Both of these letters were given to [him] by Mark Spieles and opened and read outside of [his] door, and both letters stated that [his] testimony would be compelled in July of 2008 and on August 1, 2008 in the a.m. hours - Spieles informed [him] that he'd [let Warner know about this] in June of 2008." (Id.) Thereafter, defendants Spieles, Warner, Chambers, Houser and Goss conspired to threaten him so as to prevent him from testifying against Warner. (Id. at ¶¶ 7-8.)

4

**C.    "Indifference"**

    1.    Palakovich

Hagan alleges that defendant Palakovich's conduct following the August 1, 2008 assault displayed that he was indifferent to Hagan's plight. (Doc. 45, at 6, ¶ 24.)

    2.    Novitsky

Hagan alleges that Novitsky, Deputy Director at the Department of Corrections Central Office, was "indifferent" because "[i]n June and July of 2008 [he] informed David Novitsky of the intimidation and threats on [his] life by Spieles, Warner, Goss, Houser and Chambers regarding [his] intentions to testify in a federal civil action by complaint (written), and Novitsky responded by directing Camphill's internal security to threaten [him] on July 23 and July 24 of 2008, and offered no corrective action which led to the August 1, 2008 assault." (Doc. 45, at 4, ¶ 9.)

**II.    Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also

consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Twombly, 550 U.S. 544). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Iqbal, ---U.S. ---, 129 S.Ct. at 1949 (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. See Iqbal, 129 S.Ct. at 1949–50; see also Twombly, 505 U.S. at 555, & n. 3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1948.

The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949–50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234–35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' "Iqbal, [129 S.Ct. at 1949–50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210–211.

This Court is mindful, however, that the sufficiency of a pro se pleading must be construed liberally in favor of plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, unless the court finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110–111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III. **Administrative Exhaustion**

Defendants move to dismiss a number of Hagan's claims on the ground that he failed to properly exhaust his claims through the administrative review process. (Doc. 51, 12-18.) Because a prisoner's failure to exhaust is an affirmative defense,

Jones v. Bock, 549 U.S. 199, 216 (2007), a defendant may, "in appropriate cases," move to dismiss the complaint on that basis.[1] Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follow:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). Under the PLRA, a prisoner must exhaust all available administrative remedies before raising claims under § 1983 concerning prison conditions. See 42 U.S.C. § 1997e(a). To meet this requirement, a prisoner must properly exhaust his administrative remedies. Woodford v. Ngo, 548 U.S. 81 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." Id. at 90-91. "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA

---

[1] The declaration of Rebecca Riefer, which was submitted by defendants in support of the motion to dismiss, will not be relied upon in considering the motion to dismiss. (Doc. 51-1, at 2-7.) Consequently, it is unnecessary to convert the motion to one for summary judgment.

"completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71.

Under the DOC's grievance procedure, an inmate must file a grievance with the Facility Grievance Coordinator within fifteen working days of the alleged event(s) at issue. (Doc. 51-2, at 6, Pa. Dep't of Corr. Policy Statement, DC-ADM 804, Part VI.A.8.) Once a decision is issued, the inmate generally has ten working days to appeal to the prison's Facility Manager. (See id. at 8-9, Part VI.C.1, 2.) After the Facility Manager issues a decision, the inmate generally has fifteen working days to file a final appeal with the Office of Inmate Grievances and Appeals. (See id. at 10, Part VI.D.1.)

**A.     Retaliation**

    1.     Phelps and Moore

Hagan filed grievance 242070 complaining that he sustained injuries following an August 1, 2008, assault by corrections officers and that defendant Phelps and nurse Jane Doe, later identified as defendant Moore, concluded that there was no assault and that the injuries were self-inflicted. The grievance was pursued to final review. However, he asserts only that defendant Moore treated him with deliberate indifference, acted negligently and committed malpractice. (Doc. 34-2, at 16; Doc. 51-3, at 2.) There is no mention of retaliation or the issuance of a fabricated misconduct. Consequently, the retaliation claim against defendants Phelps and Moore is unexhausted and will be dismissed.

9

### 2. Eger, Spieles and Palakovich

In grievance 268706, Hagan complained that defendants Eger and Spieles "were accessing personal information then providing that data to Inmate William Kulp in an attempt to 'sabotage' [his] 'chances for a new [criminal] trial'." (Doc. 66, at 4.) Because this claim was pursued to the final appeal level it appears fully exhausted. (Id. at 3.) Notably, defendant Palakovich is not identified as being involved in the wrongdoing. Hagan concedes this omission. (Doc. 54, at 8.) Consequently, the claim against him is unexhausted and subject to dismissal. Also subject to dismissal is the claim that Eger filed a fabricated misconduct as it is not included in the grievance.

### 3. Brant

Grievance 261727 recounts a January 20, 2009 incident during which Hagan was "sprayed with o.c." (Doc. 34-2, at 19.) He states that after he informed a sergeant and lieutenant that defendant Brant was threatening him and that he feared for his life, he was sprayed with pepper spray. (Id.) Because the grievance proceeded through all levels of review, it is fully exhausted. (Doc. 34-2, at 18.)

**B. Conspiracy**

### 1. Spieles

Hagan filed grievance 236565 alleging that defendants Spieles, Warner, Chambers, Houser and Goss conspired to threaten him so as to prevent him from testifying against defendant Warner. This grievance was appealed to the final level of review. The claim is therefore considered exhausted.

**C.     Indifference**

   1.   Palakovich

The August 1, 2008 assault was raised in Grievance 242070.  Therein, Hagan claims that Phelps ignored his complaints of assault and that defendant Moore treated him with deliberate indifference, acted negligently and committed malpractice.  (Doc. 34-2, at 16; Doc. 51-3, at 2.)  There is no mention of defendant Palakovich in the grievance.  The "indifference" claim, presumably based on *respondeat superior*, is therefore unexhausted and will be dismissed.  (Doc. 45, at 6, ¶¶ 12, 24.)

Nor is there any mention of defendant Palakovich in grievance  268706, which raised the issue of defendants Eger and Spieles attempting to sabotage his criminal case, or in grievance 261727 which concerned the harassment by defendant Brant.  These claims are also unexhausted.  (Doc. 45, at 6, ¶¶ 13, 15, 24.)

   2.   Novitsky

Hagan alleges that Novitsky was "indifferent" because he was informed in June and July of 2008, that Spieles, Warner, Goss, Houser and Chambers were intimidating him and threatening his life and, rather than take corrective action, Novitsky directed SCI Camp Hill's internal security to threaten him.  (Doc. 45, at 4, ¶ 9; 6, ¶ 26.)  He alleges that this indifference led to the August 1, 2008 assault.  Although Hagan filed grievances concerning the threatening conduct and the assault, he failed to name Novitsky in any of the grievances and did not implicate him in any respect.   The claim is therefore unexhausted.

11

**IV.    Merits**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

**A.    Retaliation**

Defendants seek to dismiss the retaliation claims lodged against defendants Eger, Spieles and Brant.[2]  The First Amendment offers protection for a wide variety of expressive activities.  See U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See

---

[2] Defendants also seek dismissal of the retaliation claims against defendants Phelps and Moore.  Because these claims are unexhausted, see section III.A.1., *supra*, the merits will not be addressed.

Turner v. Safley, 482 U.S. 78, 89 (1987). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate that (1) he was engaged in protected activity; (2) he suffered an "adverse action" by government officials; and (3) there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000); Fortune v. Basemore, 2008 WL 4525373, *4-*5 (W.D.Pa.) ("It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution."). A prison inmate engages in constitutionally protected conduct when he files requests and grievance forms. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). See also Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (finding that the filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity).

    1.    Eger and Spieles

After the August 1, 2008 assault, Hagan alleges that he filed a grievance against Corrections Officers Eger and Spieles. (Doc. 45, at 4, ¶ 10.) He alleges that upon becoming aware of the grievance, Eger and Spieles started giving information about his criminal case to inmate William Kulp who, in turn, gave detectives false information thereby sabotaging his case. (Id., at 4, ¶¶ 11, 13.) It is evident that Hagan states a retaliation claim in that he was engaged in protected activity and

suffered an adverse action. Further, there is a causal link between the protected activity and the adverse action taken against him.

Defendants, in relying on Heck v. Humphrey, 512 U.S. 477 (1994), argue that Hagan is precluded from pursuing this retaliation claim because any success Hagan would have on the claim would imply the invalidity of his criminal conviction. (Doc. 51, at 10-11.) Heck holds that, where success in a section 1983 action would necessarily imply the invalidity of a conviction or sentence, an individual's suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated. See Heck at 486–87. See also Wilkinson v. Dotson, 544 U.S. 74 81-82 (2005).

In opposition, plaintiff states that "he in no way - shape - or - form implies that the defendants' actions effects [sic] his sentence or conviction. Hagan only claims that defendants' actions were that they gave another information to feed to dectives [sic] in his active case." (Doc. 54, at 7.) There is no indication that success on this claim would imply the invalidity of his conviction. Hence, defendants' motion will be denied.

        2.    Brant

Hagan alleges that because defendant Brant was harassing him, he began filing grievances in October 2008, and continued through January 2009. (Doc. 45, at 6, ¶ 15.) Then, on January 20, 2009, Brant threatened Hagan by telling him he would be assaulted if he left his cell. Minutes later, Hagan left his cell and was sprayed with pepper spray. Brant commented "that if he didn't like it, he could

write another grievance. . . ."  Based on these allegations, it is clear that Hagan has alleged that he was engaged in protected activity, that he suffered an adverse action and that there is a causal link between the protected activity and the adverse action taken against him.  Defendants' motion will be denied with respect to this claim.

## V.     **Conclusion**

Based on the foregoing, defendants' motion to dismiss (Doc. 47) will be granted in part and denied in part and plaintiff's motion to disregard and reprimand (Doc. 61) will be denied.

An appropriate order follows.

       S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        September 30, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMONT HAGAN,** | : | **CIVIL ACTION NO. 1:10-CV-0883** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **JEFFREY BEARD, et al.,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 30th day of September, 2011, upon consideration of defendants' motion to dismiss (Doc. 47) plaintiff's second amended complaint (Doc. 45), and plaintiff's motion to disregard and reprimand (Doc. 61), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The "indifference" claim against defendant Smeal found in the second amended complaint (Doc. 45), at page 6, Count IV, Indifference, ¶ 25 is voluntarily DISMISSED pursuant to Federal Rule of Civil Procedure 41(a)(2). (See Doc. 54, at 9, ¶ 6.) The Clerk of Court shall TERMINATE this defendant.

2. The motion to dismiss is granted in part and denied in part.

3. The motion is GRANTED as to the following claims:

    a. The retaliation claim against defendants Moore and Phelps found in the second amended complaint (Doc. 45), at page 6. Count II, Retaliation, ¶ 21, is DISMISSED based on plaintiff's failure to exhaust the administrative review process. The Clerk of Court shall TERMINATE these defendants.

    b. The retaliation claim against defendant Eger located in the second amended complaint (Doc. 45) at page 6, Count II, Retaliation, ¶ 20, is DISMISSED for failure to exhaust the administrative review process.

    c.    The "indifference" claims against defendants Palakovich and Novitsky, contained in the second amended complaint (Doc. 45) at page 6, Count IV, Indifference, ¶¶ 24, 26, are DISMISSED due to plaintiff's failure to exhaust the administrative review process. The Clerk of Court is directed to TERMINATE these defendants.

3.    The motion to dismiss is DENIED with respect to the following claims:

    a.    The retaliation claims against defendants' Spieles, Eger, and Brant contained in the second amended complaint (Doc. 45) at page 6, Count II, Retaliation, ¶¶ 19, 22, will proceed as plaintiff has stated retaliation claims against these defendants and has exhausted the available administrative review process.

    b.    The conspiracy claim lodged against defendant Spieles found in the second amended complaint (Doc. 45) at page 6, Count III, conspiracy, ¶ 23, will proceed based on plaintiff's exhaustion of available administrative review procedures.

4.    Plaintiff's motion to disregard and reprimand (Doc. 61) is DENIED.

5.    Defendants shall file an answer or appropriate pretrial motion on or before October 31, 2011, addressing the following remaining claims contained in the second amended complaint (Doc. 45):

    a.    Excessive Force claim against defendants Spieles, Hubert, Jones, and Bankes. (Doc. 45, at 3, ¶ 1; at 5, ¶ 2; at 6, ¶ 18.)

    b.    Retaliation claims against defendants Eger, Spieles, and Brant. (Doc. 45, at 4, ¶¶ 10, 11, 13; at 6, ¶¶ 15, 17, 19, 22.)

    c.    Conspiracy claim against Warner, Chambers, Houser, Goss, and Spieles. (Doc. 45, at 4, ¶¶ 6-8; at 6, ¶ 23.)

                                                 S/ Christopher C. Conner  
                                                CHRISTOPHER C. CONNER  
                                                United States District Judge