## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAMONT HAGAN,             :       Civil No. 1:10-CV-883
                                     :
           Plaintiff        :       (Magistrate Judge Carlson)
                                       :
      v.                        :
                                       :
NATHAN GOSS, et al.,             :
                                       :
           Defendants.     :

## MEMORANDUM OPINION AND ORDER

## I.     FACTUAL BACKGROUND

This is a civil rights action brought by the plaintiff, Damont Hagan, a state prisoner formerly housed in the Special Management Unit (SMU) of the State Correctional Institution at Camp Hill (SCI-Camp Hill). In his complaint, the plaintiff brings claims under 42 U.S.C. §§ 1983 and 1985(2), against several present and former SCI-Camp Hill SMU staff, alleging: (1) that the plaintiff was assaulted on August 1, 2008, Amended Complaint ¶¶1-2, 19; and (2) that the defendants conspired against the plaintiff to intimidate him to prevent him from testifying in violation of 42 U.S.C. §1985(2), Amended Complaint ¶¶6-8, 23.

Presently before the court are two motions *in limine*, both of which relate to the impeachment of certain inmate-witnesses. For their part, the defendants have filed

a motion *in limine* seeking authorization to impeach these inmate witnesses by questioning them regarding the fact of their prior convictions. (Doc. 145.) Hagan, in turn, has filed his own motion *in limine* seeking to exclude any reference to these prior convictions in cross examination of either the plaintiff or the inmate-witnesses. (Doc. 155.)

For the reasons set forth below, both motions will be granted, in part, and denied, in part, in that we will permit cross examination regarding the fact of prior convictions, but will restrict the scope of that cross examination in a fashion which has previously been approved by the courts in similar circumstances. Further, to the extent this evidence regarding the plaintiff's violent criminal past informed the defendants' judgment "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them," Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), it will be admissible subject to the limitations imposed by Rules 402 and 403 of the Federal Rules of Evidence, and in assessing the degree of force that the defendants perceived was necessary on August 1, 2008, "Defendants may testify to their knowledge that [Hagan] was convicted of crimes of violence and the length of his sentences," Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012), but defendants may not describe the specific nature of those offenses.

## II.    DISCUSSION

These competing motions *in limine* call upon us to balance both the probative impeachment value and potential prejudicial impact of prior convictions of parties and witnesses in this civil rights lawsuit. Moreover, we are called upon to strike this balance in a setting where many of the plaintiff's witnesses, including the plaintiff himself, have significant prior criminal records.[1]

With respect to these convictions, the parties cast two starkly contrasting positions in their motions. Plaintiff argues that defendants' use of the witnesses' past convictions for impeachment purposes should be prohibited based on Federal Rules of Evidence 403 and 404. In this regard, plaintiff contends that the convictions have

---

[1] For example, the plaintiff, Damont Hagan, was convicted in Allegheny County of 3rd degree murder on April 4, 1997, and received a 15-40 year sentence with an expiration date of April 4, 2037. Hagan was also convicted in Luzerne County of aggravated assault, simple assault and aggravated harassment by prisoner in 2002, convictions which carry consecutive 3-6 year sentences, and in Fayette County in 2008 of aggravated harassment by prisoner and received a 3-7 year sentence. Inmate witness Terry Lee Brooks was convicted in Berks County of robbery and criminal conspiracy on May 15, 1996, and received an aggregate sentence of 9 to 20 years with a maximum of May 14, 2016. Inmate witness Ronald Jackson received a life sentence for 1st degree murder imposed in Philadelphia County. Inmate witness Gary S. Tucker was convicted in 2003 in Montgomery County of murder, criminal attempt, robbery, criminal conspiracy, intimidation of witness/victim, and corruption of minors. Inmate witness David Crews was convicted of conspiracy, robbery, aggravated assault, aggravated harassment by prisoner, simple assault, and assault by prisoner, in Delaware, Westmoreland and Luzerne Counties.

no relevance to the case at hand, and claims that evidence of the convictions should be excluded under Rule 403 because the probative value of the convictions–and particularly the murder convictions– is outweighed by the danger of unfair prejudice and their introduction will lead to confusion of the issues and mislead the jury.

In contrast, defendants argue that the convictions in question are probative of these witnesses' truthfulness and should be available during cross-examination for purposes of impeachment. According to defendants, the felony convictions indicate a flagrant disregard of societal norms and an increased likeliness that the witnesses might commit perjury. Thus, this information is relevant to the jury's evaluation of the credibility of witness testimony, a central part of the case. Defendants also note that the ten-year period set forth in Rule 609(b) runs not from the date of the witness's conviction, but rather from the date of the witness's release from prison, and thus for the most part, does not operate to bar the introduction of any of the convictions at issue in this case.

Our analysis of these competing claims is guided at the outset by Federal Rule of Evidence 609 which provides as follows:

(a) General rule. For the purpose of attacking the character for truthfulness of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was

punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

(b)   Time limit.   Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.  However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Fed. R. Evid. 609.

As written, Rule 609 is expressly subject to the balancing requirement set forth

in Rule 403 of the Federal Rules of Evidence, which  provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

With respect to this balancing of probative value and prejudicial impact commanded by Rule 403, although evidence may be excluded pursuant to Rule 403 prior to trial, the Third Circuit has cautioned that "pretrial Rule 403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also, Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Upon consideration of the parties' competing positions on the relevance and potential for prejudice resulting from impeachment of the witnesses through their prior convictions, and mindful of the Third Circuit's cautious approach to Rule 403 challenges, we find that plaintiff's motion to wholly exclude evidence of the witnesses' convictions should be denied for at least two reasons. First, Rule 609(a) makes clear that evidence of felony convictions is indeed relevant to a jury's effective

evaluation of witness credibility. Rule 609(a) states that the evidence of a witness's felony conviction "shall be admitted" except for those instances where Rule 403 or the time limit of Rule 609(b) demands otherwise. Rule 609 is based upon the "common sense proposition" that an individual who has "transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 523 (3d Cir. 1997). Its purpose is to aid the jury in assessing the credibility of a witness. Id. In this case, witness credibility will play a decisive role in the jury's decision-making process. As such, defendants should not be entirely prevented from pointing out witnesses' felony history during cross examination. The jurors should be allowed to consider such relevant information as they weigh the credibility of each witness's testimony, unless Rule 403 or Rule 609(b) demands otherwise.

Moreover, plaintiff has offered no compelling reason why the fact of these prior criminal convictions of the plaintiff and his witnesses, standing alone, should be wholly excluded due to unfair prejudice. Although reference to felony convictions during witness impeachment does carry with it some danger of prejudice, it is not so overwhelming as to substantially outweigh the probative value under Rule 403 and thus justify a pretrial order excluding evidence of all convictions. In particular, based on the facts of this case, the witnesses' status as inmates will be obvious to the jury.

Therefore, the fact that the prisoner-witnesses are also convicted felons would not result in surprise or an unfair prejudice at trial, and it is only when the prejudicial impact of evidence becomes "unfair" that the evidence must be excluded. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1344 and n.6 (3d Cir. 2002). At this time, the potential prejudice of this form of impeachment, permitted by the rules of evidence, falls short of this threshold.

For the foregoing reasons, plaintiff's motion to entirely prevent defendants from introducing evidence of the criminal convictions of the inmate witnesses will be denied. However, we recognize that the specific nature of some of these charges, and particularly the murder charges, adds a heightened element of prejudice to any cross examination which ventures into the criminal histories of inmate-witnesses. When considering impeachment of a witness by prior murder or violent crime convictions, we have must be mindful of the fact that "A murder conviction ... has the potential to do more than create a credibility handicap. It has the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired." Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012)(quoting, Tabron v. Grace, 898 F.Supp. 293, 296 (M.D. Pa.1995)). In such instances, when confronted with a conviction which may be used under Rule 609 to impeach, but whose underlying qualities have an extremely high potential for prejudice, the trial

judge may in the exercise of discretion, adopt a middle course with respect to the issue of impeachment and permit "admission of less prejudicial evidence-namely, the fact of [the witness'] conviction of a crime and resulting imprisonment without further detail." Perryman v. H & R Trucking, inc., 135 F. App'x 538, 541 (3d Cir. 2005), see, Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012)(permitting disclosure of fact of plaintiff's conviction, without disclosure of offense of conviction).

This is the course we will adopt here, permitting cross examination of plaintiff's witnesses on the fact of their various prior convictions and the resulting imprisonment, without any further detail. Such an approach in our view reconciles the probative value of convictions for impeachment purposes, while minimizing any unfair prejudice which may spring from the precise nature of the crime of conviction. Moreover, this course of action fits squarely within the framework of Rule 609(a)(1), which provides that: "evidence that a witness other than an accused has been convicted of a crime *shall be admitted, subject to Rule 403*, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid., Rule 609(a)(1).

Finally, by adopting this course we follow a path expressly endorsed by the courts in the past when confronting similar issues of this type relating to the proper scope of impeachment by prior convictions. See, e.g., Perryman v. H & R Trucking, inc., 135 F. App'x 538, 541 (3d Cir. 2005); Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012)(permitting disclosure of fact of plaintiff's conviction, without disclosure of offense of conviction).

Finally, with respect to the plaintiff himself, we note that the motions *in limine* touch upon a separate potential basis for admission of details concerning the plaintiff's criminal history, which has been marked by violent crimes, including acts of violence within the institutional setting. The plaintiff has brought an excessive force claim against the defendants arising out of an August 1, 2008, incident in the prison. The keystone to analysis of an Eighth Amendment excessive force claim entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Therefore, excessive force claims often turn on factual disputes which cannot be resolved as a matter of law. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000). Consistent with this fact-bound approach to litigation of these claims, there are several factual considerations that a jury must examine in determining whether a correctional officer has used excessive force in violation of the Eighth

Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.' " Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

Given this fact-bound approach, which examines "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them," Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000),

an inmate's known propensity for violence would be pertinent to a determination of the quantum of force needed in a correctional setting to restore or maintain order. Thus, this evidence is relevant to the issues in this case since "relevant evidence," is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Considering this evidence in the context of the claims brought in this case, if the individual corrections officers were aware of the plaintiff's prior criminal conduct and propensity for violence while incarcerated, and this information helped to form a basis to assess the threat level that the plaintiff presented, then "knowledge of such history would be relevant to the inquiry as to whether the force used against plaintiff was reasonable under the circumstances." Smith v. City of Philadelphia, Civ. A. No. 06-4312, 2009 WL 3353148, at *2 (E.D. Pa. Oct. 19, 2009) (claims of excessive force against corrections officers) (citing Virgin Islands v. Carino, 631 F.2d 226, 229 (3d Cir. 1980) ("If it can be established that the accused knew at the time of the alleged crime of prior violent acts by the victim, such evidence is relevant as tending to show a reasonable apprehension on the part of the accused.")).

However, to the extent this evidence is offered for purpose found to be permissible, since it informs "the extent of the threat to the safety of staff and inmates,

as reasonably perceived by responsible officials on the basis of the facts known to them," Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000,) it will be admissible subject to the limitations imposed by Rules 402 and 403 of the Federal Rules of Evidence.[2] This Rule 403 balancing of probative value and prejudicial impact also cautions against permitted detailed testimony in this case regarding the specifics of Hagan's prior convictions, an approach endorsed in the past by this court. See Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012) Thus, in assessing the degree of force that the defendants perceived was necessary on August 1, 2008, "Defendants may testify to their knowledge that [Hagan] was convicted of crimes of violence and the length of his sentences," Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012), but defendants may not describe the specific nature of those offenses.

## III.   ORDER

---

[2] Rule 403 of the Federal Rules of Evidence provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

AND NOW, this 29th day of May 2013, for the reasons set forth in the above memorandum, IT IS HEREBY ORDERED THAT the plaintiff's and defendants' motions *in limine* (Docs. 145 and 155.) are GRANTED, in part, and DENIED, in part, as follows:

1.     Defendants will be permitted to cross examine plaintiff's witnesses on the fact of their various prior convictions and the resulting imprisonment, without eliciting any further detail.

2.      "Defendants may testify to their knowledge that [Hagan] was convicted of crimes of violence and the length of his sentences," Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012), but defendants may not describe the specific nature of those offenses.


                              */s/Martin C. Carlson*
                              Martin C. Carlson
                              United States Magistrate Judge